## B. F. Strange v. Carrington, Patton & Company.

1. CONSIDERATION—*what not binding by way of.* The agreement of a party to perform an obligation already binding upon him will not form a consideration for an undertaking by the other party to perform another act.

2. CUSTOM—*what essential to competency of.* To render evidence of a custom admissible, it must be established that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it.

GEST, J., dissenting.

Action of assumpsit. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS. Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed October 14, 1904.

Strange v. Carrington, Patton & Co.

ROWELL & LINDLEY, for appellant.

OWEN & OWEN, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Appellee brought this suit in assumpsit against appellant to recover damages for alleged breach of a contract for the sale and delivery of corn and oats. At the conclusion of all the evidence, the court instructed the jury to find the issues for the plaintiff and to assess its damages under the evidence. The jury returned a verdict for appellee in the sum of $400, upon which the court rendered judgment.

May 18, 1903, appellant and C. C. Birney, agent for appellee, entered into a contract, by which appellant was to sell and deliver to appellee at its place of business at Monarch within thirty days thereafter, 7,000 bushels of merchantable corn at forty and one-half cents per bushel, and 1,500 bushels of merchantable oats at thirty-one cents per bushel. On June 10 following, appellant went to the office of appellee in Monarch and, as he testifies, said to Birney that he had neglected to say anything on the occasion of making the contract, about the advancement by appellee to him of a part of the purchase price for the grain; that the price of grain had gone up and appellee had made a pretty fair thing on the sale and that he wanted an advance of $2,000 on the contract; that there was some further conversation as to the weather and condition of the roads and that Birney promised to give him $2,000 within two days and an extension of thirty days, if necessary, in which to deliver the grain. He further testifies that on the 15th of June he called on Birney and asked for the $2,000 and that Birney refused to pay it to him and that he thereupon refused to deliver the grain. Birney in his testimony says that appellant applied to him for an advancement of $2,000, that he told appellant he had no authority to make the same but would notify appellee of appellant's request, and that he did not promise to pay appellant the $2,000 or grant him an extension of time.

In giving the peremptory instruction, the trial court ignored the testimony of appellant tending to prove a promise by appellee's agent to advance $2,000, and grant an extension of time upon the ground that such promise, if made, was a mere *nudum pactum*, without any consideration.

It is a well-recognized general rule that the agreement of a party to perform an obligation already binding on him, cannot form a consideration for an undertaking by the other party to perform another act. Pollock on Contracts, 177; Parsons on Contracts, 437; 1 Beach on Contracts, 197. This rule is recognized by the courts of our state in Runnamaker v. Cordray, 54 Ill. 303; Stuber v. Schack, 83 Ill. 191; Phoenix Ins. Co. v. Rink, 110 Ill. 538; Davidson v. Burke, 143 Ill. 139; Havana Press Drill Co. v. Ashurst, 148 Ill. 115; Nelson v. Pickwick Associated Co., 30 Ill. App. 333; Moran v. Peace, 72 Ill. App. 135; Reeves Pulley Co. v. Jewell Belting Co., 102 Ill. App. 375. Tested by this rule, it would seem that the agreement by appellee's agent to advance $2,000 and to grant an extension of time, was a mere gratuity—an undertaking by it to oblige the performance by appellant of an act he was already bound to perform. As a consideration for this alleged promise, appellant was not bound to deliver any more grain, nor of a better quality, nor at any other time or place, nor at a less price, nor had any substantial and unforeseen difficulty arisen to prevent the performance of his contract.

Bishop v. Busse, 69 Ill. 403, and Cooke v. Murphy, 70 Ill. 96, are cited as sustaining appellant's contention that the evidence was competent upon the ground that the mutual promises of the respective parties formed a sufficient consideration for what is termed the substituted agreement. If the cases cited cannot be said to have been overruled by, or to be in conflict with, the other cases above mentioned, the facts in the cases upon which the holdings were predicated, were different from the facts in the case at bar, and the cases are readily distinguishable. In one of those cases there was an abandonment of the work by the

party bound to perform, and in the other, an absolute refusal to perform, whereby the original contracts were held to have been terminated and the new agreements substituted, and in both cases the conditions had changed, whereby additional work was required to be performed. In the case at bar, appellant had not made default in his contract to deliver grain, nor had he refused performance, at the time he testifies appellee's agent promised to advance him $2,000, and the original contract cannot be said to have been terminated.

It was claimed by appellant that a custom existed at Monarch under which, upon a contract for the sale of grain to be delivered at a future time, the purchaser advanced a reasonable portion of the price of said grain before delivery and that such custom entered into the original contract, and it is urged that the peremptory instruction given by the court, excluded such issue from the consideration of the jury. To render evidence of a custom admissible, it must be shown that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it. The record fails to disclose evidence of any such custom at Monarch. Evidence of such custom at LeRoy was incompetent and objection to its proof was properly sustained. Furthermore, there is no evidence in the record that $2,000 was a reasonable sum to be advanced upon the contract of sale.

It is urged by appellant that there was a conflict in the evidence upon the question as to whether the grain contracted to be sold was merchantable, and that the court erred in taking that question from the jury. We do not think appellant is in a position to complain of the action of the court in that regard. Appellant testified that in response to an inquiry by appellee's agent, as to what kind of corn he had, he said, " I told him good corn or ordinary corn; it is in rail pens and it was covered up; and that it was all right, but I wouldn't grade it at all;" and that in response to a like inquiry as to the oats, he said, " I told

him the oats wasn't first-class oats, but I had sowed them and they had grown all right."

It is not seriously insisted that appellee was not financially able to pay for the grain, in the ordinary course of business, upon delivery. Appellant did not base his refusal to perform his contract upon that ground, nor did he tender a performance, and if he had, the verdict of the jury must, under the evidence, have necessarily been against him on that issue.

We have examined all the questions raised by appellant upon the errors assigned, and are unable to find wherein the court erred to his prejudice. The judgment stands for substantial justice and is affirmed.

*Affirmed.*

Mr. Justice GEST, dissenting.