(No. 24199.—

THE UNDERGROUND CONSTRUCTION COMPANY, Appellee, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellant.

*Opinion filed October 22, 1937—Rehearing denied Dec. 9, 1937.*

ERNST BUEHLER, THOMAS F. DONOVAN, LAWRENCE J. FENLON, and WILLIAM C. OEHLSEN, for appellant.

JOHN L. McINERNEY, and LUELLA BITHER, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes here on a certificate of importance and appeal granted by the Appellate Court for the First District to review a judgment of that court affirming a judgment of the superior court of Cook county against appellant for $60,866.58, and costs, on appellee's claim for special.

damages arising out of delay in completing its contract with defendant.

In April, 1928, appellee (herein referred to as plaintiff) entered into a contract with appellant (herein called defendant) by which plaintiff agreed to construct what is known in the record as "South Crawford Avenue Bridge Approaches Superstructure" for a stated price payable in monthly installments, as the work progressed, in such amounts as were shown by estimates approved by the chief engineer of defendant, less twelve and one-half per cent to be retained by defendant until the completion and acceptance of the work to be performed under the contract. Plaintiff entered upon the performance of its contract and, by January 23, 1929, had completed approximately seventy per cent of the work. Plaintiff presented each month an estimate for work done and materials furnished during the preceding month, and, on certificate of the engineer, was so paid. This continued until December 1, 1928. During that month plaintiff became entitled to $18,952.50, and for January, up to January 23, $14,705.25. These sums, totalling $33,657.75, were not paid and appellee suspended work and refused to continue until the past due estimates were paid. Some months later it secured judgment against defendant for this sum, which judgment was paid during the following October. Defendant's failure to pay the December and January installments was due to lack of funds. These funds were later procured by the sale of bonds authorized by an act of the General Assembly, in force July 1, 1929. From this source sufficient funds to complete the work were also secured and a supplemental agreement, hereinafter considered, was entered into on November 21, 1929, whereupon plaintiff proceeded to complete the contract and was paid in full the amount specified in the original contract. Its claim in this case is for special damages to it arising out of the ten months delay caused, as appears to be conceded, by defendant's lack of funds.

The contract provided that the chief engineer of defendant, to prevent disputes and litigation, should determine all questions in relation to the work and its proper execution under the contract, and his estimate and decision should be final and conclusive on both the parties and constitute a condition precedent to the right of the contractor to receive compensation for anything done or furnished under the contract. On February 9, 1929, plaintiff, by its attorney, notified defendant's chief engineer that it had suspended work and would continue such suspension until the overdue installments were paid, consenting to a delay to August 1, 1929, but not later, without mutual agreement. On May 10, 1929, judgment was entered on its suit to recover unpaid installments. The supplemental contract of November 21, 1929, provided that plaintiff should proceed to complete the construction of the work under the terms of the original contract. Defendant waived any penalties for delay in performance. It recited that plaintiff claimed special damages by reason of the delay and that defendant denied plaintiff's right to such damages. The supplemental contract provided that it should in no way preclude plaintiff from claiming or suing for the recovery of damages sustained by it by reason of the suspension of the work.

In this suit, started during 1931, plaintiff filed the common counts, and a special count alleging an express promise by the chief engineer of defendant to pay the damages which accrued to plaintiff by reason of the suspension of the work. Thereafter, two special counts for damages arising from the breach of the contract by defendant were filed. As the Appellate Court found, as a fact, that the engineer for defendant did not promise to pay special damages, that issue of fact is not before us and the special count based on such claim is also out of the case. The cause was tried three times. On the second trial plaintiff recovered a judgment for $17,191.57 which the Appellate Court reversed, remanding the cause for a new trial. On a re-

trial before the court, without a jury, plaintiff recovered a judgment for $60,866.58 which the Appellate Court affirmed and, as hereinbefore stated, granted this appeal on certificate of importance.

Defendant's numerous assignments of error raise the following principal questions: (1) Was the judgment recovered for the two unpaid installments *res judicata* as to plaintiff's claims in this suit? (2) Was plaintiff, as argued by defendant, given only one of three remedies when the district breached its promise to pay the installments due,— *i. e.*, (a) to treat the contract as rescinded and recover for part performed, or (b) to continue the work and sue on installments as they came due, or (c), to complete the work and sue for the unpaid balance of the entire contract price, or was plaintiff entitled, as argued by it, to suspend the work until those installments were paid, and later sue for special damages arising out of the delay? As plaintiff agrees that it had a right to any one of the three optional remedies mentioned, the question on this branch of the case is whether it also had a right to suspend the work until the installments were paid and recover special damages for the delay. This question involves the further question whether plaintiff's suspension of work amounted to a rescission and abandonment of the contract by it, as argued by defendant. The third question of importance is whether it was within the contemplation of the parties, as shown by the original contract, that damages for delay caused by the district, might be recovered by the contractor.

We are not impressed with the argument of defendant that the judgment secured for the unpaid installments is *res judicata* as to plaintiff's claim here. At the time of that suit plaintiff could not have proved its claim to special damages arising out of delay since, on May 29, 1929, the date of that judgment, but four of the ten months delay had passed and no one could tell how long the delay would continue. Since the claim is for damages arising out of

the delay, to have sued for those accruing during the four months that had elapsed would have been analogous to bringing repeated suits for a single demand. This practice is condemned in *Nickerson* v. *Rockwell*, 90 Ill. 460. Plaintiff was not required so to do. In order that recovery for installments amount to *res judicata* of plaintiff's claim here, this latter claim must have been then due. (*Nickerson* v. *Rockwell, supra.*) Cases cited by defendant on this point do not announce a contrary doctrine. This contention cannot be sustained.

Was plaintiff confined to a choice of the three remedies hereinbefore mentioned, or was it entitled to suspend the work until the overdue installments were paid? Generally, payment in installments is not considered payment for so much work done, though the amount of the installment is generally so measured, but is, in contemplation of the parties, a part-payment of the whole sum to be paid under the contract. Professor Williston in his work on contracts expresses the opinion that the contractor, on non-payment of an installment of the contract price, might refuse to perform further until such payment was made, and, if delayed for a long and unreasonable time, might refuse to go on with the work altogether, though a day's delay in payment would not justify permanent cessation of the work. (2 Williston on Contracts, p. 1626.) In his work on sales he adheres to this view and presents it with more detailed illustration. (2 Williston on Sales, (2d ed.) sec. 467-E.) This view is also supported in the reasoning of the opinion in *Guerini Stone Co.* v. *Carlin Construction Co.* 248 U. S. 334. This court recognized the justice of such a principle in *City of Chicago* v. *Duffy,* 218 Ill. 242, wherein it was held that failure on the part of the city to pay installments when due, prevented it from claiming damages from resulting delay in the completion of the contract.

*Tobey* v. *Price,* 75 Ill. 645, was a suit by the contractor for delay on the part of the defendant in furnishing ma-

terial. The proof showed the defendant delayed, for some months, the delivery of iron work and cut stone which the contract required him to deliver. Plaintiffs claimed they were damaged by this delay of the defendant and damages were allowed on that account. In this court the defendant argued that if he failed to perform his part of the contract, the plaintiffs could have abandoned the job and brought their action for such damages as they incurred in not being able to complete it; that if, instead of abandoning, they elected to proceed and complete the work they would be presumed to have waived the lapse of time, and to have done the work under contract and could, therefore, claim only the contract price. In other words, the defendant there, as does defendant here, claimed that plaintiffs were not entitled to damages for defendant's delay. In passing on that question and affirming the judgment, this court said: "We know of no authority for such a position. Appellees could have abandoned the work and brought their action for damages, but their right to proceed with the work to completion, and then claim damages, cannot be seriously questioned. The performance of the contract by appellees [plaintiffs] was dependent on performance by appellant, and if he neglected or failed to perform in due season his part of the contract, by which appellees [plaintiffs] were delayed in the completion of the work, to their damage, common reason suggests they should be compensated therefor. There is an express stipulation in the contract that the defendant shall be liable to plaintiffs for neglect, carelessness, or omission of duty on his part, or any persons he might employ on the work. By reason of appellant's [defendant's] neglect, or that of his employees, to put the cast iron and cut stone work in place, ready for backing, appellees [plaintiffs] were delayed nearly four months beyond the time stipulated for the completion of the work. Appellant [defendant] was liable to damages for such delay, and the amount found by the court is by

no means excessive. It was clearly for the benefit of appellant [defendant] that the work should go on, rather than be abandoned, and he ought not to complain." Likewise, in *Louisville and Nashville Railway Co.* v. *Hollerbach*, 105 Ind. 137, 5 N. E. 28, the railroad contracted to furnish a foundation on which Hollerbach contracted to furnish, and place in position, stone for a pier, within a specified time. Payments to be made on monthly estimates, less twenty per cent. The railroad did not furnish the foundation and, by reason of certain changes in measurements, certain stone had to be re-shaped and re-dressed. It was held, in a suit for damages caused by the railroad company's delay in furnishing the foundation and for its error in specifications, that the contract furnished the measure of compensation for the work, to which might be added, as damages, any direct loss to the plaintiff occasioned by the defendant's suspending, or unreasonably delaying, the prosecution of the work, without the consent of the contractor.

In *State* v. *Feigle*, 162 N. E. (Ind.) 55, Feigle entered into a contract with the State of Indiana and its highway department to do certain grading and the construction of a highway. The State ordered Feigle to proceed with the construction. As the work progressed the engineers in charge ordered certain additions to be made to the grade and then ordered them removed. It developed that construction could not be completed because the State had failed to obtain the necessary right of way on which to build the highway. In a suit for damages the plaintiff recovered, and in affirming the judgment, it was held that the equitable rule was, that the State had the duty of furnishing the plaintiff, in time not to hinder him in the progress of his work, a place to construct the highway, and that, having failed so to do, after it had ordered him to commence the work and thereby put him to great expense in assembling his equipment, paying the rentals therefor and other overhead expenses greatly to the plaintiff's dam-

age, it was liable to the plaintiff for its loss due to the breach of the contract. This conclusion is sustained in the following cases: (*United States* v. *Behan,* 110 U. S. 338, 28 L. ed. 168; *Mulholland* v. *Mayor,* 113 N. Y. 631, 20 N. E. 856; *Tobey* v. *Price, supra; Ripley* v. *United States,* 223 U. S. 695, 56 L. ed. 614.) While in this case plaintiff might have treated the contract as rescinded and proceeded in one of the three ways herein mentioned, it was not bound to do so.

Defendant argues that plaintiff's suspension of work, and refusal to continue it, amounted to a rescission and abandonment of the contract by plaintiff and it could not resume work until the supplemental contract of November 21, 1929, was executed between the parties. The supplemental contract was for the evident purpose of extending the time for the execution of the work for a period equal to the period of delay, and to waive the penalty of $100 per day, for delay accruing to the defendant under the original contract. The supplemental contract recites that the contractor claims damages for which the district denies liability. That contract, by its terms, did not affect, favorably or unfavorably, plaintiff's claim for special damages. Plaintiff, by its letter, notified defendant that it stood ready to resume work under the contract when accrued installments were paid. Plaintiff did not rescind nor abandon the contract.

Since it follows from the views herein expressed that plaintiff has a right to damages, there arises the question of the measure of those damages and a consideration of that part of the record before us bearing on that question.

Article 32 of the original contract provides as follows: "Should the contractor be obstructed or delayed in the commencement, prosecution or completion of any part of said work by any act or delay of the Sanitary District, or by any act or delay on the part of railroads in furnishing cars or transporting any equipment, material or appurtenances

for said work, or by riot, insurrection, war, pestilence, acts of public authorities, fire, lightning, earthquake, cyclone, floods, or through any default or delay of other parties under contract with said Sanitary District, or due to strikes, or to other causes, which causes of delay mentioned in this article (Art. 32) in the opinion of the chief engineer are entirely beyond the control of the contractor, then the time herein fixed for the completion of the work so delayed shall be extended for a period equivalent to the time lost by reason of any of the causes aforesaid, but no such allowance shall be made unless the contractor notifies the engineer before the fifth of each succeeding month of all delays occurring in the preceding month.

"It is further expressly agreed that said contractor shall not be entitled to any damages or compensation from the said Sanitary District on account of any delays resulting from any of the causes above specified in this article (Art. 32) except compensation for wages for extra time for any necessary watchmen and for extra premiums of his bond, actually paid by said contractor on account of said additional time so required to complete all work hereunder. The chief engineer shall decide the number of days that said contractor has been so delayed and his decision shall be final and binding upon both parties hereto."

It has been the rule in this country and England since the early case of *Hadley* v. *Baxendale*, 5 English Ruling Cases 502, (8 R. C. L. 451, par. 22,) that "The damages recoverable for a breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it."

It will be seen from article 32 of the original contract that in case the contractor be obstructed or delayed in the

completion of the work by any act or delay of the district, the time for the completion of the work shall be extended for a period equivalent to the time lost by reason of such fault of the district and such damages allowed, and only such, as in that article specified.

Was the failure to pay the past due installments an "act or delay" which may be said to have obstructed or delayed the contractor in the completion of the work? Counsel say that such a construction was not within the contemplation of the parties and the Appellate Court so held. The argument is, that the parties could not have contemplated that the defendant would not have the money to pay installments promptly. In that view, few elements of damage could be said to come within the contemplation of the parties. Provisions of this character are usually inserted, not for the purpose of providing for that which the parties expect will happen, but to provide for situations that may arise. Here they have provided that any "act or delay" of the district by which the contractor might be "obstructed or delayed" shall afford ground for relief to the contractor as therein provided. That failure to pay, or delay in paying, may well obstruct or delay the prosecution of the work by the contractor seems clear.

In the early case of *Palm and Robertson* v. *Ohio and Mississippi Railroad Co.* 18 Ill. 217, it was held that, under the facts of that case, failure to pay for locomotives delivered did not prevent the vendors from continuing their contract and so did not constitute a breach of the contract on the part of the railroad. In *County of Christian* v. *Overholt*, 18 Ill. 223, it was held that plaintiff could not recover for having been "prevented from going on" with the contract, in the absence of showing some affirmative act on the part of the defendant, as by being ordered to desist from further work or by showing defendant's omission to perform some condition precedent.

These cases cited by counsel do not aid us in the construction of the language of article 32 of the contract. That language does not contemplate an act or omission on the part of the defendant preventing further prosecution of the work; but if "any act or delay" on the part of the district obstructs or delays the contractor's prosecution of the work, such is made the ground of the special damages therein specified. We are of the opinion that damages for obstructing or delaying the work, caused by failure to pay installments, are within the contemplation of the parties as expressed in the contract, and that such delay in payment constituted ground for special damages.

What, then, is the measure of such damages? This is also provided for and limited by article 32 of the contract. The language is "said contractor shall not be entitled to any damages or compensation * * * except compensation for wages for extra time for any necessary watchmen and for extra premiums of his bond, actually paid by said contractor on account of said additional time so required to complete all work hereunder." This language exactly describes the situation before us and plaintiff, by it, agreed to such limitation.

Plaintiff argues that the record shows large costs involved in rehabilitating and cleaning equipment and large rental values, all of which were lost. The only answer that can be made to such claim is the one the parties themselves have provided. Such items of cost might, by general or specific terms, have been included in the contract, but, not only were they not included, but the contract specifically declares that the plaintiff shall not be entitled to any damages or compensation for delay except those there enumerated. This is the contract of the parties, and, however strongly we might feel that plaintiff has been more severely damaged, this court can declare the rights of the parties only by the contract, as the language of that instrument dictates.

372

Other questions raised in the briefs do not require discussion.

The superior court erred in entering judgment for $60,866.58, and the Appellate Court erred in affirming that judgment. Both judgments are reversed, and the cause is remanded to the superior court for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*